## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 2004-0005** |
| | ) | |
| **RUSSELL E. ROBINSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Russell E. Robinson,** *pro se*

## <u>MEMORANDUM OPINION AND ORDER</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant's "Emergency Request for Clarification of Judgment/Request for Travel to Land of Birth" (Dkt. No. 1352); Defendant's "18 U.S.C. Section 3583(e) Motion Requesting Modification or Termination of Term of Supervised Release and 'Notice of Eligibility for Amendment 782 of the U.S.S.G.'" (Dkt. No. 1359); Defendant's "Notification Motion Requesting Ruling on Pending Clarification of Judgment & 3583(e) Motions" (Dkt. No. 1366); the parties' respective Oppositions and Replies (Dkt. Nos. 1361, 1363, 1368, 1369, 1375, 1376); and the parties' supplemental briefs (Dkt. Nos. 1383, 1384), filed pursuant to an Order of the Court (Dkt. No. 1380).

An evidentiary hearing on Defendant's Motions was held on April 18, 2016. Alphonso G. Andrews, Jr., Esq., appeared on behalf of the United States, and Russell E. Robinson, the Defendant, appeared *pro se*. For the reasons discussed below, the Court will grant in part and deny as moot in part Defendant's "Emergency Request for Clarification of Judgment/Request for Travel

to Land of Birth"; grant in part and deny in part Defendant's "18 U.S.C. Section 3583(e) Motion Requesting Modification or Termination of Term of Supervised Release and 'Notice of Eligibility for Amendment 782 of the U.S.S.G.'"; and grant Defendant's "Notification Motion Requesting Ruling on Pending Clarification of Judgment & 3583(e) Motions."

## I.      BACKGROUND

On April 11, 2003, a federal grand jury returned a multi-count indictment charging Defendant, and nine others, with "one or more counts of conspiracy, narcotics possession and distribution, and money laundering." *United States v. Hendricks*, 395 F.3d 173, 175 (3d Cir. 2005).[1] The indictment alleged that Defendant participated "as an advisor and pilot" in "a large-scale narcotics-trafficking organization, which . . . imported and distributed cocaine and marijuana throughout the United States Virgin Islands and elsewhere." *Id*. A jury trial was held on July 11, 2005, and "[o]n August 3, 2005, the jury returned a verdict, finding [Defendant] guilty of conspiracy to possess with intent to distribute cocaine, conspiracy to import cocaine, and conspiracy to launder money." *Robinson v. United States*, 2009 U.S. Dist. LEXIS 110262, at *1-*2 (D.V.I. Nov. 12, 2009).

On February 28, 2007, Defendant was sentenced to 160 months of incarceration, followed by five years of supervised release. *See id*. He filed a direct appeal on March 5, 2007, and the Third Circuit affirmed his conviction on August 15, 2008. *Id*.; *see also United States v. Fleming*, 287 F. App'x 150 (3d Cir. 2008). Defendant was released from the Federal Bureau of Prisons on November 14, 2014,[2] and began serving his five-year term of supervised release on that date. His

---

[1] The case was originally brought in the District Court of the Virgin Islands, Division of St. Thomas and St. John. However, the Court granted the Government's "Motion for Change of Vicinage," and transferred the matter to the District Court of the Virgin Islands, Division of St. Croix. (*See* Dkt. No. 92).

[2] Defendant appears to have been transferred from the Federal Bureau of Prisons to a halfway house in April 2014, prior to his release from custody on November 14, 2014. (*See* Dkt. No. 1352 at 3; Dk. No. 1359 at 2).

term of supervised release is scheduled to terminate on November 13, 2019. Defendant currently resides in Fort Lauderdale, Florida, under courtesy supervision with the United States Probation Office for the Southern District of Florida.

On October 6, 2015, Officer Maria Pizzi from the United States Probation Office for the Southern District of Florida sent a letter to the United States Probation Office for the District of the Virgin Islands informing the Virgin Islands Probation Office that Defendant, without permission, traveled on a small aircraft outside the Southern District of Florida on September 18, 2015. In the letter, Officer Pizzi stated that Defendant was issued a letter of reprimand, and that Defendant voluntarily signed a "Waiver of Hearing to Modify Conditions of Supervised Release." Officer Pizzi recommended a modification of Defendant's conditions of supervised release to include fifty (50) hours of community service. Her recommendation was reported to this Court on November 12, 2015, and accepted by the Court on December 9, 2015.

## II.      DISCUSSION

### A. Defendant's "Emergency Request for Clarification of Judgment/Request for Travel to Land of Birth"

In his "Emergency Request for Clarification of Judgment/Request for Travel to Land of Birth," Defendant seeks clarification of two of the standard conditions of supervision contained in the Judgment and Commitment Order entered in this case—i.e., "the defendant shall not leave the judicial district without the permission of the court or probation officer" and "the defendant shall support his or her dependents and meet other family responsibilities." (Dkt. No. 1352 at 1; *see also* Dkt. No. 1352-2 at 1). Defendant also requests "emergency permission to travel to the Commonwealth of Dominica." (Dkt. No. 1352 at 1).

In support of these requests, Defendant explains that on February 28, 2015, he submitted a written request to his probation officer, Maria Pizzi, requesting "travel to the Commonwealth of

Dominica" to visit his 87-year-old maternal grandmother; "assess a damaged Cessna 404 for salvage purposes"; and "speak to government officials concerning contract aircraft services." (*Id.* at 6). Defendant states that he was informed by Officer Pizzi, on November 20, 2014, that "[a]ll travel requests to foreign lands . . . had to be approved by a federal judge," and to send in requests for foreign travel "at least forty-two (42) days in advance" of planned travel. (*Id.*). According to Defendant, on March 9, 2015, Officer Pizzi denied his travel request—citing "dangerousness, risk to the public, and flight risk" as factors considered—without first consulting with a judge. (*Id.* at 8, 10).

Defendant asserts that while on pre- and post-conviction release in this Court, he "was permitted to work as an airplane pilot, flying commercially into and out of the United States Virgin Islands, St. Thomas, and never once did [he] '[f]lee,' or pose any '[r]isk' or '[d]anger' to the community or any persons[.]" (*Id.* at 9). Defendant contends that Officer Pizzi—by denying his foreign travel request—has impermissibly modified the conditions of his supervised release without the benefit of a hearing and the opportunity to be heard. (*Id.* at 10). He contends further that Officer Pizzi has in effect imposed an occupational restriction that prohibits him from accepting "foreign work, in his field of expertise" and from adhering to the condition of his supervised release that he "shall support his . . . dependents and meet other family responsibilities." (*Id.* at 12).

### 1.  Applicable Legal Principles

Under Federal Rule of Criminal Procedure 32.1(c), a defendant on supervised release may raise a challenge to the authority of a probation officer by "apply[ing] to the sentencing court [by motion] for a clarification or change of conditions." FED. R. CRIM. P. 32.1 advisory committee's note to 1979 amendments; *see also* 18 U.S.C. § 3583(e)(2). The Advisory Committee has

4

explained that this right is important for two reasons: "(1) the [defendant] should be able to obtain resolution of a dispute over an ambiguous term or the meaning of a condition without first having to violate it; and (2) in cases of neglect, overwork, or simply unreasonableness on the part of the probation officer, the [defendant] should have recourse to the sentencing court when a condition needs clarification or modification." *Id.*

## 2.  Analysis

### a.  Foreign Travel

With regard to Defendant's February 28, 2015 travel request, Defendant contends that Officer Pizzi unilaterally modified the conditions of his supervised release by requiring him to seek in advance the approval of a federal judge for foreign travel. (*See* Dkt. No. 1352 at 12). He further contends that Officer Pizzi unlawfully denied his request to travel to Dominica for work and to visit his grandmother by denying his request without first consulting with a judge. (*See id.* at 10). Defendant seeks clarification of the condition of his supervised release that states: "the defendant shall not leave the judicial district without the permission of the court or probation officer." (Dkt. No. 1352-2).

Volume 8E of the Guide to Judiciary Policy (also known as "Monograph 109") sets forth guidelines for United States probation officers who supervise federal offenders. The guidelines provide, in relevant part:

> The standard conditions of supervision prohibit the offender from leaving the district without the permission of the probation officer.
>
> The offender should be instructed to submit any travel requests in advance to allow the officer sufficient time to verify the nature and purpose of the travel.
>
> Upon receipt of any travel request, the officer should document the request in the chronological record, along with the results of the officer's investigation and assessment of the request, the decision made, and the related directives given to the offender. . . .

Before allowing travel outside the district, officers should check travel restrictions or special requirements in the destination district, make an assessment of third-party and other risk posed by the travel, and determine whether or not the offender is in compliance with conditions of supervision (especially those requiring payment of criminal or family financial obligations). Any risk should be balanced against the purpose of and need for travel as it relates to furthering the objectives of supervision in the individual case, e.g., maintaining or securing employment, acquiring education, and strengthening family ties. . . .

Officers must seek the express consent of the court or Parole Commission before granting an offender permission to travel outside of the United States.

§ 460.55.30(a)-(c).

By advising Defendant that approval by a federal judge is required for foreign travel, Officer Pizzi was properly following the guidelines. She was not modifying the conditions of Defendant's supervised release. Further, pursuant to the guidelines, Officer Pizzi acted within her authority by requiring Defendant to submit travel requests in advance of his planned travel. She also acted within her authority when she denied Defendant's February 28, 2015 request to travel to Dominica. The guidelines state that an officer is required to seek the "express consent of the court . . . before *granting* an offender permission to travel outside the United States." § 460.55.30(c) (emphasis added). There is no requirement that the officer must consult with the court if, after investigation and assessment of the request, the officer decides to deny the request. In view of the foregoing, the Court finds that there was no impropriety in the handling of Defendant's February 28, 2015 travel request, including the requirements imposed in connection therewith.

### b. Emergency Request to Travel to Dominica

After Officer Pizzi denied Defendant's February 28, 2015 travel request, Defendant challenged that denial by filing an emergency request to travel to Dominica with the Court. (*See* Dkt. No. 1352). Subsequently, on August 30, 2015, Defendant submitted a renewed request to travel to Dominica to Officer Pizzi. His request was sent by Officer Pizzi, without objection, to the United States Probation Office for the District of the Virgin Islands. On September 3, 2015, an

6

officer of the Virgin Islands Probation Office presented the request to the Honorable Curtis V. Gómez of the District Court of the Virgin Islands, St. Thomas and St. John Division. Judge Gómez approved Defendant's request on September 4, 2015. Pursuant to the approval, Defendant was permitted to travel to visit his grandmother in Dominica for a seven-day period during the month of September. According to Defendant, he traveled to Dominica on September 19, 2015 and returned to Fort Lauderdale, Florida on September 25, 2015. (*See* Dkt. No. 1359 at 4). Therefore, as Defendant acknowledged at the April 18, 2016 hearing, Defendant's request for "emergency permission to travel to the Commonwealth of Dominica" is now moot.

### c.  Occupational Restriction

Defendant also argues that Officer Pizzi modified the conditions of his supervised release by imposing an occupational restriction in that he "cannot accept foreign work[] in his field of expertise"—i.e., "aircraft appraisal, repossession for banks and lending institutions, aircraft salvage, [and] aircraft export and import." (Dkt. No. 1352 at 12). He contends that the alleged occupational restriction also impacts his right to travel. (*Id*.). Defendant states that he "wants to continue to work in aviation, wherever on the [g]lobe the job(s) may be . . . [and he] has no reason to 'flee' or be a 'risk' or 'danger' to any individual or body [politic]." (*Id*. at 14). Defendant seeks clarification of the condition of his supervised release that states: "the defendant shall support his or her dependents and meet other family responsibilities." (Dkt. No. 1352-2).

Pursuant to § 5F1.5 of the United States Sentencing Guidelines, a district court "may impose a condition of . . . supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so[.]" U.S.S.G. § 5F1.5(a); *see also* 18 U.S.C. § 3563(b)(5). To impose such a condition, the district court must determine: (1) that "a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction;" and (2)

that "imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." U.S.S.G. § 5F1.5(a)(1)-(2). If the district court determines that both requirements are met, it must "impose the condition for the minimum time and to the minimum extent necessary to protect the public." *Id*. at (b).

"A probation officer lacks the authority to impose an occupational restriction as a condition of supervised release." *United States v. Dempsey*, 180 F.3d 1325, 1326 (11th Cir. 1999). The statutory authority to impose an occupational restriction as a condition of supervised release is vested in the court. *See* 18 U.S.C. § 3563(b)(5) ("The *court* may provide, as a further condition[], . . . that the defendant refrain . . . from engaging in a specified occupation, business, or profession bearing a reasonably related direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances.") (emphasis added); *see also* U.S.S.G. § 5F1.5(a) ("The *court* may impose a condition of . . . supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so[.]") (emphasis added). The sentencing court in this matter did not impose an occupational restriction as a condition of Defendant's supervised release.

Here, the Court does not find that Officer Pizzi unlawfully imposed an occupational restriction on Defendant. The fact that Officer Pizzi did not approve Defendant's February 28, 2015 request to travel to Dominica "to assess a damaged Cessna 404 for salvage purposes" and "to speak to government officials concerning contract aircraft services" does not equate to the existence of an occupational restriction under 18 U.S.C. § 3563(b)(5) or U.S.S.G. § 5F1.5. Further, the condition that "the defendant shall not leave the judicial district without the permission of the

8

court or probation officer" is not an occupational restriction, but rather a geographical limitation that a court may impose as a condition of supervised release. *See United States v. Blackston*, 940 F.2d 877, 884 n.10 (3d Cir. 1991); *see also* U.S.S.G. § 5D1.3(c)(1).[3]

As Defendant acknowledged at the April 18, 2016 hearing, Defendant is not prohibited from accepting foreign work in the field of aviation—and thereby supporting his dependents, which is a condition of his supervised release. He simply must obtain permission before doing so, if the work involves travel outside the judicial district. In response to questions from the Government, Defendant admitted at the April 18, 2016 hearing that the genesis of his dispute with the supervised release travel condition has nothing to do with the extent to which his requests are being granted or the timeframe within which Officer Pizzi has responded to his requests, but rather his relationship with Officer Pizzi.[4] According to Defendant, he and Officer Pizzi engage in verbal "sparring" every time he submits a travel request.

To alleviate the alleged verbal "sparring" between Defendant and Officer Pizzi,[5] the Government, at the April 18, 2016 hearing, proposed that the Court enter as an Order of the Court a "Stipulation" that requires Defendant and Officer Pizzi to follow certain procedures when

---

[3] The Third Circuit has explained that the "standard" conditions of supervised release "derive directly from section 3583 [of Title 18 of the United States Code and] were established by the Judicial Conference Committee on the Administration of the Probation System in July of 1987." *United States v. Blackston*, 940 F.2d 877, 884 n.10 (3d Cir. 1991). Subsection (d) of section 3583 provides that a court "may order, as a further condition of supervised release, . . . any condition set forth as a discretionary condition of probation in section 3563(b) . . . ." 18 U.S.C. § 3583(d). Section 3563(b)(14) empowers a district court to order the defendant to "remain within the jurisdiction of the court, unless granted permission to leave by the court or a probation officer." 18 U.S.C. § 3563(b)(14).

[4] At the April 18, 2016 hearing, Defendant acknowledged that he has submitted several travel requests to Office Pizzi, which were granted within a relatively short timeframe. (*See* Dkt. No. 1376 at 3-4).

[5] Due to her travel arrangements, Officer Pizzi, who testified at the beginning of the April 18, 2016 hearing, had to leave the hearing early. Officer Pizzi was excused by the Court after the parties indicated that there was no further need for her presence. Because of her early departure, however, she was unable to confirm or deny the allegations subsequently made by Defendant.

Defendant submits a request for business or foreign travel. (*See* Gov't Ex. 1).[6] Counsel for the Government represented at the April 18, 2016 hearing that he reviewed the "Stipulation" with Officer Pizzi, and that she has no objection to the procedures. Defendant also stated at the hearing that he does not have any objections to the procedures—provided they are enforced by the Court. Based on the Court's review of the "Stipulation" submitted by the Government, and the representations that Officer Pizzi and Defendant can abide by the procedures listed therein, the Court will enter the procedures set forth in the "Stipulation" as an Order of the Court.

Having found that Officer Pizzi did not impose an occupational restriction on Defendant, Defendant's argument that the alleged occupational restriction impacts his right to travel, fails as well. Indeed, in *Turner v. United States*, 347 F. App'x 866 (3d Cir. 2009), the Third Circuit rejected the defendant-parolee's argument that "travel restrictions in general are unconstitutional," noting that it "had previously held that 'conditions of probation include restrictions on a defendant's right to travel.'" *Id.* at 869 (quoting *United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999)). Accordingly, Defendant's right to travel argument is without merit.

### B. Defendant's "18 U.S.C. Section 3583(e) Motion Requesting Modification or Termination of Term of Supervised Release and Notice of Eligibility for Amendment 782 of the U.S.S.G."

In his "18 U.S.C. Section 3583(e) Motion Requesting Modification or Termination of Term of Supervised Release and Notice of Eligibility for Amendment 782 of the U.S.S.G.," Defendant asserts that "changed and unforeseen circumstances" warrant a modification of one of the standard conditions of his supervised release—i.e., "the defendant shall not leave the judicial district

---

[6] With respect to business travel within the United States, the proposed "Stipulation" requires Defendant to notify his probation officer via e-mail and telephone of his need to travel as soon as the need arises. The probation officer is then required to "make an earnest effort" to respond to the travel request within twenty-four hours. Defendant must submit proof of his travel to his probation officer within twenty-four hours of his return. With respect to foreign travel, Defendant must submit his request for foreign travel to his probation officer forty-two days in advance of his travel date. His probation officer "will [then] make an earnest effort to perform due diligence and submit the request to the Court within two weeks of receipt" of the travel request.

without the permission of the court or probation officer." (Dkt. No. 1359 at 1). In the alternative, Defendant requests clarification of the term "travel" as it relates to work and pleasure, or early termination of his term of supervised release pursuant to his eligibility for a sentence reduction under Amendment 782 and the fact that he allegedly served excess prison time. (*Id*. at 8).

As an initial matter, the Court rejects Defendant's argument that excess prison time can be credited toward a term of supervised release. As the Third Circuit stated in *Burkey v. Marberry*, 556 F.3d 142 (3d Cir. 2009), a sentencing court has the discretion to modify the length of a term of supervised release "as long as the reason for doing so is not to offset excess prison time." *Id*. at 149; *see also United States v. Johnson*, 529 U.S. 53, 57-60 (2000) (holding 18 U.S.C. § 3624(e) "does not reduce the length of a supervised release term by reason of excess time served in prison"). Accordingly, the Court cannot take into consideration any excess prison time Defendant may have served in determining whether early termination of Defendant's term of supervised release is warranted.

In its first Opposition, the Government interpreted Defendant's Motion as a request to reduce his sentence pursuant to Amendment 782, and asserted that the Court should summarily deny the Motion. (*See* Dkt. No. 1361). In his Reply, Defendant responded that he did not file a Motion pursuant to Amendment 782; rather, Amendment 782 was referenced as a circumstance that the Court can consider when adjudicating his motion to modify and/or terminate his term of supervised release, filed pursuant to 18 U.S.C. § 3583(e). (*See* Dkt. No. 1363 at 1).[7] Defendant

---

[7] In his Reply, Defendant requests that the Court strike the Government's Opposition "to preclude the possibility of the Court denying relief [not] sought" and because the Government "never directly address[ed] . . . [the] relief . . . actually requested." (Dkt. No. 1363 at 2). The Court finds that Defendant has not established that striking the Government's Opposition is warranted. Therefore, the Court will deny Defendant's request.

asserts that "while eligible" for Amendment 782, he cannot benefit from the Amendment due to the fact he is no longer incarcerated. (*Id*.).[8]

The Government subsequently filed a second Opposition, in which it reinterprets Defendant's Motion as a motion for early termination of his supervised release. (*See* Dkt. No. 1368 at 1). The Government argues that Defendant has "fail[ed] to allege exceptional or extraordinary circumstances which would warrant early termination." (*Id*.). According to the Government, "[p]ermitting the defendant to terminate his supervision after just over one year would appear to permit a sentence that is insufficient and less than necessary. Doing so would also create unwarranted disparities with other similarly situated defendants who comply with the terms of supervised release." (*Id*. at 2). The Government asserts that, "in considering the defendant's motion for early termination, the Court should be mindful of the serious nature of defendant's criminal conduct." (*Id*.).

### 1.   Applicable Legal Principles

Section 3583(d) of Title 18 United States Code requires a district court to impose certain statutorily mandated conditions of supervised release when sentencing criminal defendants. *See* 18 U.S.C. § 3583(d); *see also United States v. Voelker*, 489 F.3d 139, 143 (3d Cir. 2007).[9] Section 3583(d) also allows a district court "to impose more specific conditions of supervised released

---

[8] To the extent that Defendant seeks early termination of his term of supervised release on the basis of his alleged eligibility under Amendment 782, which revised the Sentencing Guidelines applicable to drug trafficking offenses, the Court finds that Defendant does not qualify for relief under Amendment 782. Defendant was released from the custody of the Federal Bureau of Prisons on November 14, 2014. Any order reducing a defendant's term of imprisonment must have an effective date of November 1, 2015, or later. *See* U.S.S.G. § 1B1.10. Therefore, as Defendant acknowledges, he cannot benefit from Amendment 782. (*See* Dkt. No. 1363 at 1).

[9] The statutorily mandated conditions of supervised release include, *inter alia*, that "the defendant not commit another Federal, State, or local crime during the term of supervision"; "the defendant not unlawfully possess a controlled substance"; "the defendant cooperate in the collection of a DNA sample"; and "the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance." 18 U.S.C. § 3583(d).

tailored to the specific offense and offender." *Voelker*, 489 F.3d at 143; *see also* 18 U.S.C. § 3583(d). A district court has broad discretion when imposing such conditions. *See United States v. Smith*, 445 F.3d 713, 716 (3d Cir. 2006) ("District courts enjoy broad discretion in fashioning conditions of supervised release.") (internal quotation marks and citation omitted). However, any conditions imposed "must be 'reasonably related' to the factors set forth in 18 U.S.C. § 3553(a)" and "[involve] 'no greater deprivation of liberty than is reasonably necessary' to deter future criminal conduct, protect the public, and rehabilitate the defendant." *Voelker*, 489 F.3d at 143-44 (quoting 18 U.S.C. § 3583(d)(1)-(2)).

Under section 3583(e), a district court retains the authority to later modify, reduce, or terminate the conditions previously imposed, after consideration of certain factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3583(e)(1)-(2).[10] Section 3583(e)(1) provides that, after the defendant has completed one year of supervised release, the district court may terminate a term of supervised release and discharge the defendant if "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *Id.* § 3583(e)(1). Section 3583(e)(2) provides that a district court may, *inter alia*, modify or reduce the conditions of a term of supervised release "pursuant to the provisions of [Rule 32.1(c) of the Federal Rules of Criminal

---

[10] The section 3553(a) factors that the Court must consider when deciding whether to modify, reduce, or terminate the conditions of a term of supervised release are the same as those considered in determining an appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence to criminal conduct; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (6) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 944(a)(2); (7) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (2)(B)-(D), and (4)-(7).

Procedure][11] and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." *Id.* § 3583(e)(2).

### 2. Analysis

#### a. Modification of Supervised Release

In *United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997), cited by the Third Circuit in *United States v. Smith*, 445 F.3d 713, 717 (3d Cir. 2006), the Second Circuit held that, under § 3583(e)(2), "changed, new, or unforeseen circumstances such as exceptionally good behavior by the defendant, could serve as a basis for a District Court's discretionary decision to modify conditions of supervised release." *United States v. Kay*, 283 F. App'x 944, 946 (3d Cir. 2008) (citing *Lussier*, 104 F.3d at 36).[12] In the instant Motion, and at the April 18, 2016 hearing, Defendant contends that "there have been numerous changed and unforeseen circumstances" that warrant a modification of one of the standard conditions of his supervised release—i.e., "the defendant shall not leave the judicial district without the permission of the court or probation officer." (Dkt. No. 1359 at 5).

The specific "changed and unforeseen circumstances" listed by Defendant in his Motion for Modification—and which he recounted to the Court at the April 18, 2016 hearing—are as follows: (1) he "has relocated to South Florida"; (2) he "opened his [o]wn business, which has a [n]ational and [i]nternational foot print and customer base"; (3) he "has been contacted . . . by a group of investors, from Dominica, who have decided to start their own small airline based in Dominica" and want Defendant "to spearhead the operation"; and (4) he "has a contract, with a

---

[11] As noted above, Rule 32.1(c) of the Federal Rules of Criminal Procedure governs modifications of supervised release. FED. R. CRIM. P. 32.1(c).

[12] The Third Circuit has "not expressly set forth a 'significantly changed or extraordinary circumstances' standard." *United States v. Kay*, 283 F. App'x 944, 946 (3d Cir. 2008); *see also United States v. Murray*, 692 F.3d 273, 278-79 (3d Cir. 2012). However, the Court has noted that "district courts in [the Third] Circuit have used *Lussier* as support for following that as a guide to the exercise of discretion." *Id.* (citing cases).

Tamiami (Kendall Florida) based flight school to build all the flight school's engines[,] [w]hich would require [him] to be flexible in his [t]ravel arrangements." (*Id*. at 5-6).[13] Defendant asserts that he is unable to take advantage of these opportunities because of the travel restriction imposed as a condition of his supervised release. (*Id*. at 6).

Defendant also submitted an "Affidavit of Exceptional & Unforseen [sic] Changed Circumstances in Support of 18 U.S.C. Section 3583(e) Motion," in which he states that he "is currently in discussions with certain individuals in his Country of Birth, who are requesting he head up a new Political Party, to contest General Elections in the Commonwealth of Dominica, where [he] will be the next Head of State if his new political party becomes successful at the Polls." (Dkt. No. 1376-1 at 1). Defendant asserts in his Affidavit that the special conditions of his supervised release "create an unnecessarily onerous prerequisite of obtaining often delayed 'permission' to travel to Dominica" and that "[i]t will be nigh impossible to maintain family and political obligations with the current special conditions of supervised release." (*Id*. at 1-2).

At the April 18, 2016 hearing, Defendant represented to the Court that he is seeking—through his request to modify the travel condition of his supervised release—an Order of the Court allowing him to travel to the Virgin Islands and internationally for business without advance approval of the United States Probation Office, and to report to the United States Probation Office upon his return. Defendant stated, at the hearing, that he is not requesting a modification of the travel condition as it relates to personal travel. Defendant agreed that the standard procedures that are currently in place for personal travel—i.e., advance approval—should remain in effect.

---

[13] In his "Notification Motion Requesting Ruling on Pending Clarification of Judgment & 3583(e) Motions," Defendant also states that he submitted a letter to his probation officer that "foreshadows" a contractual agreement with the Government of the Commonwealth of Dominica, which will require him "to travel to the Commonwealth of Dominica . . . on an as needed basis, more often than not, on very short notice." (Dkt. No. 1366 at 2).

As noted above, the Government has proposed that the Court enter as an Order of the Court a "Stipulation" that requires Defendant and Officer Pizzi to follow certain procedures when Defendant submits a request for business or foreign travel. (*See* Gov't Ex. 1). Upon consideration of the section 3553(a) factors, and in view of the various business opportunities that Defendant has represented require him to travel—on short notice—outside of the United States, the Court will grant Defendant's request to modify the travel condition of his supervised release as it relates to business and foreign travel by adopting the agreed-upon "Stipulation" of the parties.[14] Specifically, the Court will enter as an Order of the Court the procedures set forth in the "Stipulation," with the understanding that the parties agree that the "Stipulation" will resolve the concerns raised by Defendant, so long as the "Stipulation" is enforced as an Order of the Court.

### b.  Termination of Supervised Release

Defendant has alternatively requested early termination of his term of supervised release. (*See* Dkt. No. 1359 at 7).[15] Section 3583(e)(1) contemplates that the termination of a term of supervised release can be considered after a defendant has served one year of that term. *See* 18 U.S.C. § 3583(e)(1); *see also Burkey v. Marberry*, 556 F.3d 142, 149 (3d Cir. 2009). In this case, Defendant commenced his term of supervised release on November 14, 2014. The instant Motion was filed on October 23, 2015. Therefore, at the time Defendant filed the instant Motion, he had not completed one year of his term of supervised release, and his motion was premature. Even assuming that Defendant was eligible for relief under section 3583(e)(1) at the time he filed his

---

[14] *See* note 6, *supra*.

[15] At the April 18, 2016 hearing., the Government argued that 21 U.S.C. § 841(b)(1)(A), the statute of conviction in this case, which imposes a mandatory five-year term of supervised release, may prohibit early termination of Defendant's term of supervised release. However, in a supplemental brief, the Government, after analyzing the issue, concluded that "this Court's discretionary authority to terminate a term of supervised release in the in the instant matter is not limited by the mandatory supervised release provision of Section 841(b)." (Dkt. No. 1384 at 8). Based on an independent analysis of the issue, the Court agrees with the Government and will, therefore, proceed to determine whether early termination of Defendant's term of supervised release is warranted.

Motion, and considering that Defendant has now served over nineteen months of his term of supervised release, Defendant has not established that early termination is warranted under the circumstances here.

In *United States v. Laine*, 404 F. App'x 571 (3d Cir. 2010), the Third Circuit explained that "early termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it[.] Simple compliance with the conditions of supervised release are expected and not exceptional[.]" *Id*. at 573 (citing *Lussier*, 104 F.3d at 36). In the instant case, Defendant, relying on *United States v. Murray*, 692 F.3d 273 (3d Cir. 2012),[16] argued at the April 18, 2016 hearing that "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *Id*. at 280 (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011) (internal quotation marks omitted)).[17] According to Defendant, his term of supervised release should be terminated because he has productively reintegrated into society and is a low-risk offender who does not require close supervision by the United States Probation Office.

In support of his request for early termination, Defendant further asserted at the April 18, 2016 hearing that he has presented evidence of "exceptional or extraordinary" circumstances that warrant early termination of his term of supervised release. Specifically, that he has an eighty-nine-year-old grandmother who resides in Dominica; he has been asked to spearhead a medical ambulance service; he has a proposal for a flight school pending before the Federal Aviation Administration ("FAA"); and he has political aspirations in his birth country of Dominica.

---

[16] The Court notes that *United States v. Murray*, 692 F.3d 273 (3d Cir. 2012), dealt with modification, not termination, of supervised release conditions.

[17] Defendant also relied on *United States v. Granderson*, 511 U.S. 39 (1994), which provides that "[s]upervised release . . . is not punishment in lieu of incarceration." *Id*. at 50.

Defendant contends that these "exceptional or extraordinary" circumstances require substantial travel and that his conditions of supervision inhibit his ability to adequately care for his grandmother and pursue business opportunities.

While the Court recognizes that it has the discretion to grant early termination pursuant to 18 U.S.C. § 3583(e)(1), the Court does not find that the circumstances cited by Defendant are exceptional or extraordinary. Certainly, the efforts Defendant has undertaken to reintegrate into society, and his sincere desire to care for his grandmother, are laudable. However, they are insufficient to warrant an early termination of his term of supervised release. *See Laine*, 404 F. App'x at 574 (finding defendant's "plan to open a monastery to serve victims of domestic violence, and to travel the United States and Canada to raise money and public awareness," did not mean that his continuation on supervised release was "a miscarriage of justice"). Accordingly, after considering the relevant section 3353(a) factors, the Court will deny Defendant's request for early termination of his term of supervised release.[18]

<u>**ORDER**</u>

**UPON CONSIDERATION** of the foregoing, and the entire record herein, it is hereby

**ORDERED** that Defendant's "Emergency Request for Clarification of Judgment/Request for Travel to Land of Birth" (Dkt. No. 1352) is **GRANTED IN PART AND DENIED AS MOOT IN PART**; and it is further

**ORDERED** that Defendant's request for clarification of the standard conditions of his supervised release—i.e., "the defendant shall not leave the judicial district without the permission

---

[18] At the April 18, 2016 hearing, Officer Pizzi explained to the Court that the United States Probation Office for the Southern District of Florida has a policy of considering making a recommendation to terminate a five-year term of supervised release for a low-risk offender, upon the request of the defendant or his or her counsel, after the defendant has been under supervision for twenty-six months. Officer Pizzi explained further that the Probation Office will make the recommendation only if the prosecuting United States Attorney's Office agrees that termination is appropriate and Defendant has fully complied with all of the conditions of supervision.

of the court or probation officer" and "the defendant shall support his or her dependents and meet other family responsibilities"—is **GRANTED**; and it is further

ORDERED that Defendant's emergency request to travel to Dominica is **DENIED AS MOOT**; and it is further

ORDERED that Defendant's "18 U.S.C. Section 3583(e) Motion Requesting Modification or Termination of Term of Supervised Release and 'Notice of Eligibility for Amendment 782 of the U.S.S.G.'" (Dkt. No. 1359) is **GRANTED IN PART AND DENIED IN PART**; and it is further

ORDERED that Defendant's request to modify the travel condition of his supervised release as it relates to business and foreign travel is **GRANTED**; and it is further

ORDERED that Defendant and Officer Maria Pizzi of the United States Probation Office for the Southern District of Florida, and any of her successors, shall abide by the following procedures for all business and foreign travel requests:

1) With respect to business travel within the United States, its territories and possessions:

- Defendant shall submit his travel application in writing via email as soon as the need for travel arises;

- Defendant shall notify the probation officer via telephone of his travel request as soon as the need for travel arises;

- All travel applications must be fully completed with all required information at the time of submission;

- The probation officer shall make an earnest effort to respond to the request within twenty-four (24) hours of receipt; and

- Defendant shall submit proof of travel within twenty-four (24) hours of return from travel.

2) With respect to foreign travel:

- Defendant shall submit his request forty-two (42) days in advance of travel; and

- The probation officer shall make an earnest effort to perform required due diligence and submit the request to the Court within two weeks of receipt.

and it is further

**ORDERED** that Defendant's request for early termination of his term of supervised release is **DENIED**; and it is further

**ORDERED** that Defendant's "Notification Motion Requesting Ruling on Pending Clarification of Judgment & 3583(e) Motions" (Dkt. No. 1366) is **GRANTED**.

**SO ORDERED.**

Date: July 7, 2016

_____/s/_____
WILMA A. LEWIS
Chief Judge